Opinion filed April 28, 2022



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00254-CV

_____

## CREEKSIDE RURAL INVESTMENTS, INC.; MANOR RANCHES, LTD.; AND JAY DICKENS, Appellants

## V.

## DAN HICKS AND PAM BROWNING, Appellees

**On Appeal from the 132nd District Court**

**Scurry County, Texas**

**Trial Court Cause No. 26824**

### O P I N I O N

On appeal, Creekside Rural Investments, Inc.; Manor Ranches, LTD.; and Jay Dickens (collectively, Appellants) present eight issues in which they challenge rulings made by the 132nd District Court of Scurry County, Texas. Named defendants in the case are Pam Browning and Scurry County Judge Dan Hicks.

Appellants unsuccessfully attempted to add Judge Ernie Armstrong of the 132nd District Court as a defendant. Appellants filed a motion to recuse Judge Armstrong. After another judge sitting by assignment denied the recusal motion, Judge Armstrong presided over the trial court matters.

The trial court granted Judge Hicks's plea to the jurisdiction and dismissed him from the lawsuit. The trial court additionally granted Browning's plea to the jurisdiction and dismissed her from the lawsuit. In addition to her plea to the jurisdiction, Browning submitted a motion to dismiss under Rule 91a of the Texas Rules of Civil Procedure, which the trial court granted as an alternative basis for dismissing her from the lawsuit. We affirm.

*Factual and Procedural History*

This case has a unique factual and procedural history, but because our opinion in Cause No. 11-20-00044-CV carefully recounts many of the facts of this case, we limit the factual recitation here to relevant events occurring *after* those detailed in this court's opinion in Cause No. 11-20-00044-CV.[1]

Briefly, Appellants purchased a tract of land in Williamson County in 2017 that lies to the north of guardianship-estate property over which Browning's husband and, upon his death, Browning were the court-appointed guardians. A gun range was operated on a portion of the land owned by the guardianship estate; that portion of land adjoined Appellants' subsequently purchased tract of land. Appellants filed a lawsuit in Williamson County against the gun range, its company operator and owner, as well as the ward, Stacy James Browning, Browning's disabled son.

In May 2019, Appellants sent an electronic letter to Judge Hicks in Scurry County, highlighting what they alleged to be "problems." Judge Hicks responded

---

[1]*See In re Guardianship of Stacy James Browning*, No. 11-20-00044-CV, 2022 WL 599220 (Tex. App.—Eastland Feb. 28, 2022, no pet. h.).

that he would look into things, and when Appellants received no further communication, they reached out again by e-mail. Judge Hicks did not respond to this e-mail. On August 8, 2019, Appellants filed a motion to intervene in the guardianship, and the case was transferred to the district court in Scurry County. The district court denied the intervention, and those rulings were then appealed to this court in Cause No. 11-20-00044-CV.

Shortly after the district court denied Appellants' motion to intervene in the guardianship proceeding, Appellants filed a new lawsuit in district court and named Judge Hicks and Pam Browning as the defendants. On June 2, 2020, Appellants filed a motion to recuse, requesting that Judge Armstrong recuse himself from the lawsuit against Judge Hicks and Pam Browning. This motion was duly referred by assignment from the presiding judge of the Seventh Administrative Judicial Region of Texas to the Honorable John B. Board on June 6, and following a hearing, the motion to recuse was denied on August 17, 2020.

Appellants later filed "Plaintiffs' First Amended Petition" on September 28, 2020, attempting to add Judge Armstrong as a defendant in the case. On October 1, 2020, the district clerk sent Appellants' counsel a letter indicating that she was required to sever claims against the district judge into a new case, with a different cause number, pursuant to Section 30.017(b) of the Texas Civil Practice and Remedies Code.[2] Appellants did not refile the petition against Judge Armstrong under the new cause number, and instead continued their attempts to file their petition under the original matter. The clerk did not issue a citation for Judge

---

[2]Section 30.017 provides that a claim against a district court judge that is added to a case pending in that court must be made under oath and is automatically severed from the original case, with a new cause number assigned by the clerk of the court, and an additional filing fee is required. TEX. CIV. PRAC. & REM. CODE ANN. § 30.017(a), (b) (West 2020) ("(b) The clerk of the court *shall* assign the claim a new cause number, and the party making the claim *shall* pay the filing fees." (emphasis added)).

Armstrong. Appellants filed a petition for writ of mandamus on October 9, 2020, asking the trial court to order the district clerk to accept the original filings under the original cause number and to issue a citation in the original matter so that Judge Armstrong could be served in the lawsuit. The record does not indicate that the trial court issued a ruling on Appellant's petition for mandamus.

Following a hearing on October 21, 2020, the trial court issued a final judgment. The trial court granted Judge Hicks's plea to the jurisdiction and dismissed him from the lawsuit. The trial court also granted Browning's plea to the jurisdiction and dismissed her from the lawsuit. The trial court *alternatively* granted Browning's Rule 91a motion to dismiss Appellants' cause of action and dismissed her from the lawsuit pursuant to Rule 91a. The trial court denied Appellants' motion to dismiss the motion for sanctions filed by Browning, which it later denied.

Following the final judgment, Appellants filed this appeal, alleging eight issues.

*Discussion*

*I. Appellee Browning*

Appellants' issues one, two, and three are related to Appellee Pam Browning. In their first issue, Appellants argue that the trial court erred in granting Browning's plea to the jurisdiction. In their second issue, Appellants allege that the trial court erred in granting Browning's Rule 91a motion to dismiss. Issues one and two can be addressed together because, in affirming the trial court's ruling on issue one, issue two becomes moot. Appellants assert in their third issue that the trial court erred when it denied Appellants' Anti-SLAPP motion to dismiss Browning's motion for sanctions under the Texas Citizens Participation Act.

4

### A. Plea to the Jurisdiction and Rule 91a Motion to Dismiss

In their first issue, Appellants argue that the trial court erred in granting Browning's plea to the jurisdiction. In her plea to the jurisdiction, Browning asserted that Appellants' petition demonstrated on its face that Appellants lack standing. Appellants contend that they have standing to sue under Section 1151.105 of the Texas Estates Code. TEX. EST. CODE ANN. § 1151.105 (West 2020).

#### Standard of Review

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). This is a proper method by which to challenge a trial court's subject-matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225−26 (Tex. 2004); *Garms v. Comanche Cty.*, No. 11-19-00015-CV, 2020 WL 7413991, at *2 (Tex. App.—Eastland Dec. 18, 2020, no pet.) (mem. op.) (citing Bland, 34 S.W.3d at 554) Subject-matter jurisdiction is a question of law, and we apply a de novo standard of review to a trial court's ruling on a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 226. We construe pleadings liberally in favor of the plaintiffs and look to the pleader's intent. *Id.*

A plea to the jurisdiction can raise two different challenges: (1) a challenge to the plaintiff's pleadings regarding his allegation of jurisdictional facts or (2) an evidentiary challenge to the existence of jurisdictional facts. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *Miranda*, 133 S.W.3d at 226−27. The plea may challenge the pleadings, the existence of jurisdictional facts, or both. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018); *City of Merkel v. Copeland*, 561 S.W.3d 720, 723 (Tex. App.—Eastland 2018, pet. denied). Here, Browning only challenged the sufficiency of Appellants' pleadings.

When there is a challenge to the pleadings, "we determine if the plaintiff has alleged facts affirmatively demonstrating subject-matter jurisdiction." *Alamo Heights*, 544 S.W.3d at 770.

*Analysis*

1. *Strict statutory construction in determining the existence of a private cause of action*

Standing to sue may be predicated upon either statutory or common law authority. *See, e.g.*, *Williams v. Lara*, 52 S.W.3d 171, 178−79 (Tex. 2001). When a party alleges that its private cause of action is provided for under a particular statutory provision, our duty is to ascertain the drafters' intent using the plain language of the statute and its context. *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 562–68 (Tex. 2014). "[T]he analysis is a straight statutory construction of the relevant statute to determine upon whom the Texas Legislature conferred standing and whether the claimant in question falls in that category." *In re Sullivan*, 157 S.W.3d 911, 915 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding).

Applying a "strict rule of construction" to statutory enforcement schemes, we may not imply causes of action except when the drafters' intent is clearly expressed from the language as written. *Brown v. Arturo De La Cruz*, 156 S.W.3d 560, 567 (Tex. 2004). When a statute explicitly provides certain rights of enforcement but is silent as to the right sought to be enforced, we may presume that the legislature intended for that right to not be included. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571–72 (1979) (stating that "implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best"). Furthermore, a right of enforcement should not be implied simply because the statute "fails to adequately protect intended beneficiaries." *Brown*, 156 S.W.3d at 567. The fact that a person has suffered harm from the violation of a statute does not automatically give rise to

6

a private cause of action in favor of that person. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979). The law similarly disfavors implying third-party rights of enforcement. *See Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002).

    *2. Construing Section 1151.105*

Section 1151.105 of the Texas Estates Code provides guidance where a guardian willfully neglects to use ordinary diligence required in collecting guardianship estate claims and recovering estate property, and it makes the guardian and its sureties liable, on a suit by "any person interested in the estate, for the use of the estate, the amount of the claims, or the value . . . that has been lost due to the guardian's neglect." EST. § 1151.105(b).

Both Appellants and Browning focus the crux of their arguments on the language of Section 1151.105(b). Appellants argue that subsection (b) should be read separately from subsection (a), creating a new potential cause of action unrelated to the collection of claims or recovery of property outlined in subsection (a). Browning argues the opposite—that subsection (b) is limited to the willful neglect of ordinary diligence as applied to those duties outlined in subsection (a).

Appellants imply that the legislature intended for subsection (b) to allow for Appellants' specific cause of action. We disagree. The language of Section 1151.105(b) is clearly predicated on a violation of the duties outlined in Section 1151.105(a). The text of the statute reads:

> (a) If there is a reasonable prospect of collecting the claims or recovering the property, the guardian of the estate shall *use ordinary diligence* to:
>
> > (1) collect all claims and debts due to the ward; and
> >
> > (2) recover possession of all property to which the ward has claim or title.

(b) *If the guardian wilfully neglects to use ordinary diligence*, the guardian and the sureties on the guardian's bond are liable, on the suit of any person interested in the estate, for the use of the estate, the amount of the claims, or the value of the property that has been lost due to the guardian's neglect.

EST. § 1151.105 (emphasis added). Although Section 1151.105 does not refer to subsection (a) in subsection (b),[3] subsection (a) defines what ordinary diligence must be used—collecting and recovery. Subsection (b) establishes the consequence should the guardian willfully neglect the use of ordinary diligence in the tasks set out in subsection (a). Considering the plain language of the statute, read in context with *Jaster*, 438 S.W.3d at 562–68, we find Browning's argument persuasive as to the intent of the legislature when recodifying the Estates Code and hold that subsection (b) may not be read as a completely separate cause of action, but rather, we construe it as a contingent method of recovery if there is a failure to meet the duties outlined in subsection (a).

Reviewing the plain language of Section 1151.105 and its context, no private cause of action is created that is applicable to Appellants' suit. Generally, this statute creates guardian and bond surety liability to the guardianship estate. Noticeably absent is an applicable provision for failing to pay claimed damages to claimants, especially when there is no final judgment or adjudication of liability. Appellants misapply Section 1151.105 as a tool for pursuing claims and remedies that are not vested, but rather, that are contingent. Generally, third parties with tort claims cannot use the statute to pursue that cause of action, and nothing in the statutory language or context demonstrates otherwise in this matter. *See* EST. § 1151.105.

---

[3]Appellants claim this to be significant because under a similar provision of the Estates Code, the legislature included a specific reference to subsection (a): "If a personal representative willfully neglects to use the ordinary diligence required under Subsection (a) . . . ." EST. § 351.151. We find this distinction is without a difference in the meaning of the statute or the intent of the legislature, particularly when reviewing the context of the statute. *See Jaster*, 438 S.W.3d at 562–68.

We conclude that Section 1151.105 does not create a private cause of action for Appellants to assert a claim that is unrelated to Browning's diligence in collecting claims and recovering property. Further, Appellants have presented no authority to support their contention, that somehow Section 1151.105 creates a private cause of action in their favor against the guardian, particularly under the facts of this case.

Importantly, Appellants conceded during argument before the trial court that Browning did not fail to pursue and collect claims due the estate. The only violation claimed is that Browning "failed to use ordinary diligence." That claimed violation falls short of the statutory requirement. To be actionable, the statute requires that the guardian must willfully neglect to use ordinary diligence. EST. § 1151.105. Appellants' admission further supports the lack of standing as determined by the trial court. Willful neglect requires more than merely a failure to use ordinary diligence. The legislature has not defined "willful neglect" in the Estates Code; however, courts have otherwise defined the term as meaning "a conscious, intentional failure or reckless indifference." *U.S. v. Boyle*, 469 U.S. 241, 245 (1985). Appellants did not plead, nor argue to the trial court, any conscious or intentional failure or reckless indifference on the part of Browning to fulfill the duties assigned to her under Section 1151.105(a).

The trial court correctly concluded that Appellants did not have standing to bring a claim under Section 1151.105 against Browning. We have reviewed the plain language of Section 1151.105 and no private cause of action as asserted by Appellants is either stated or intimated. Therefore, we hold that the trial court did not err in granting Browning's plea to the jurisdiction. Accordingly, Appellants' first issue is overruled.

In their second issue, Appellants challenge the trial court's decision to grant Browning's Rule 91a motion to dismiss. Because we have concluded that the trial

court did not err in granting Browning's plea to the jurisdiction, we need not address Appellants' second issue because it is not "necessary to [the] final disposition of the appeal." TEX. R. APP. P. 47.1. In this regard, the trial court did not award attorney's fees pursuant to TEX. R. CIV. P. 91a.7. Therefore, because our resolution of Appellants' first issue is dispositive of the trial court's power to dismiss the lawsuit against Browning, we need not address the merits of Browning's Rule 91a motion to dismiss. *See McEndree v. Volke*, 634 S.W.3d 413, 428 n.7 (Tex. App.—Eastland 2021, no pet.).

### B. Texas Citizens Participation Act

In their third issue, Appellants argue that the trial court erred when it denied their Texas Citizens Participation Act (TCPA) motion to dismiss Browning's motion for sanctions. Appellants contend that Browning's motion for sanctions constitutes a "legal action," which implicates the TCPA. TEX. CIV. PRAC. & REM. CODE § 27.003(a) (West 2020).

The TCPA employs a three-step process to determine whether a lawsuit or claim is subject to dismissal. *Montelongo v. Abrea*, 622 S.W.3d 290, 296 (Tex. 2021). Under the first step, the party moving for dismissal must show by a preponderance of the evidence that the TCPA applies to the "legal action" that is the subject of the motion to dismiss. *See* CIV. PRAC. & REM. §§ 27.003(a), .005(b); *In re Lipsky*, 460 S.W.3d at 586−87 (stating that movant must show by preponderance of evidence that the nonmovant's claim is based on, relates to, or is in response to movant's exercise of the right of free speech, right to petition, or right of association). If the movant satisfies that burden, then under the second step, the burden shifts to the nonmovant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." CIV. PRAC. & REM. § 27.005(c). Alternatively, the nonmovant can avoid its burden of demonstrating a

prima facie case entirely by showing that one of the TCPA's exemptions applies. *See id.* § 27.010(a); *Morrison v. Profanchik*, 578 S.W.3d 676, 680 (Tex. App.—Austin 2019, no pet.) (explaining that "[i]f an action falls under a TCPA exemption, the TCPA does not apply and may not be used to dismiss the action"). Finally, if the TCPA applies and the nonmovant party satisfies its burden of presenting a prima facie case, the burden shifts back to the movant to establish by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim. CIV. PRAC. & REM. § 27.005(d).

Appellants argue that Browning's motion for sanctions was based on, or in response to, Appellants' exercise of a protected right as identified in the TCPA. Browning responded that the TCPA did not apply because the motion for sanctions was not a "legal action" as defined under the TCPA and that, if the TCPA did apply, Browning met her burden to establish by clear and specific evidence a prima facie case for each essential element of the request for sanctions.

The trial court denied Appellants' TCPA motion to dismiss without stating the basis for its ruling. However, either of the first two steps of the TCPA analysis could provide a basis for the trial court's ruling. Specifically, the trial court could have denied the TCPA motion to dismiss because Appellants failed to meet their burden to establish that the TCPA applied to Browning's motion for sanctions. *See* CIV. PRAC. & REM. § 27.003(a). Likewise, the trial court could have denied the motion to dismiss because Browning met her burden to establish by clear and specific evidence a prima facie case of each essential element of the request for sanctions. *Id.* In their brief, however, Appellants focus only on whether there was a "legal action" that implicated the TCPA, and they present no substantive argument regarding whether Browning met her burden to establish a prima facie case.

In general, "an appellate court must affirm a trial court's judgment if an appellant does not challenge *all* independent bases or grounds that fully support a complained-of ruling or judgment." *Morrison v. Profanchik*, No. 05-17-00680-CV, 2018 WL 4090635, at \*3 (Tex. App.—Dallas Aug. 28, 2018, pet. denied) (mem. op.) (emphasis added); *see Escondido Res. II, LLC v. Las Tinajas Minerals, LTD.*, No. 04-20-00132-CV, 2020 WL 7753986, at \*2 (Tex. App.—San Antonio Dec. 30, 2020, no pet.) (mem. op.). If the appellant "fails to assign error to an independent ground that fully supports the complained-of ruling or judgment, an appellate court must accept the validity of that ground, rendering harmless any error in the grounds challenged on appeal." *Morrison*, 2018 WL 4090635, at \*3; *see, e.g., Cardwell*, 2018 WL 3454800, at \*5; *Oliphant Fin. LLC v. Angiano*, 295 S.W.3d 422, 423–24 (Tex. App.—Dallas 2009, no pet.); *see also Kasper v. Meadowood Ranch Estates, Inc. Prop. Owners Ass'n*, No. 05-07-00982-CV, 2008 WL 3579379, at \*2 (Tex. App.—Dallas Aug. 15, 2008, no pet.) (mem. op.) (if summary judgment is granted, whether properly or improperly, on a ground not challenged on appeal, the judgment must be affirmed).

Because Appellants failed "to assign error to an independent ground" that would fully support the "complained-of ruling"—that the trial court erred in denying their motion to dismiss under the TCPA—we must affirm the trial court's ruling based on the unchallenged ground. *Morrison*, 2018 WL 4090635, at \*3. Accordingly, we overrule Appellants' third issue.

*II. Appellee Judge Hicks*

Appellants' fourth and fifth issues are related to Judge Hicks. Appellants assert that the trial court erred in granting Judge Hicks's plea to the jurisdiction and subsequently dismissing him from the lawsuit. Appellants allege that Judge Hicks

violated Section 1201.003 of the Texas Estates Code, which waives judicial immunity. We address both issues together.

In his plea to the jurisdiction, Judge Hicks raised judicial immunity and challenged the trial court's subject-matter jurisdiction. A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction over a pleaded cause of action. *Miranda*, 133 S.W.3d at 225−26. As we stated above, subject-matter jurisdiction is a question of law, and we apply a de novo standard of review to a trial court's ruling on a plea to the jurisdiction. *Id.*

Standing to sue may be predicated upon either statutory or common law authority. *See, e.g.*, *Williams*, 52 S.W.3d at 178−79. When, as here, the Texas Legislature has conferred standing by statute, "the analysis is a straight statutory construction of the relevant statute." *In re Sullivan*, 157 S.W.3d at 915. Section 1201.003 of the Texas Estates Code contains statutory restrictions on who may bring suit, and therefore the statute itself serves as the framework for our standing analysis. *See id.* Additionally, a plaintiff only has standing if it has "suffered a concrete and distinct injury" and if it can show that "it—rather than the public or a third party—was *personally* injured." *Jurgens v. Martin*, 631 S.W.3d 385, 397 (Tex. App.—Eastland 2021, no pet.) (emphasis added).

Here, Appellants do not allege any damages suffered *personally* from the alleged actions and inactions of Judge Hicks. This alone is enough to support the conclusion of the trial court. But, even if there were personal damages suffered due to Judge Hicks's actions, the language of Section 1201.003 would still prohibit Appellants from having standing. Section 1201.003 reads:

> A judge is liable on the judge's bond *to those damaged* if damage or loss *results to a guardianship or ward* because of the gross neglect of the judge to use reasonable diligence in the performance of the judge's duty under this subchapter.

13

Est. § 1201.003 (emphasis added).  The language of Section 1201.003 is clear that there must be damage suffered by a guardianship or ward.  Appellants are neither a representative of the guardianship nor the ward in the guardianship at issue, and they therefore are not the proper persons to bring a claim under Section 1201.003.  Because Appellants also have no alleged personal damages, they have no standing under Section 1201.003 to bring a lawsuit against Judge Hicks under these circumstances, and the decision of the trial court must be upheld.  We note that Appellants and Judge Hicks focus their arguments on the extent of judicial immunity protection that is afforded judges under Section 1201.003; however, the plain language of this statute prohibits this court from ever reaching that analysis.  Without standing, we decline to address the potential extent of judicial immunity or any waiver that Section 1201.003 may or may not contemplate.  Accordingly, we overrule Appellants' fourth and fifth issues.

### III. Judge Ernie Armstrong[4]

Appellants' final three issues (six through eight) are related to allegations made against Judge Armstrong and the attempt to join him as a defendant in the underlying lawsuit.  Appellants allege wrongdoing by the district clerk, as well as a violation by Judge Armstrong under Section 1201.003.  None of these three issues was ruled on by the trial court, nor did the trial court refuse to rule on them.[5]  Because

---

[4]Judge Armstrong is not a named defendant in this matter, despite Appellants' submission of briefing to the contrary.  That alone would be sufficient grounds for us to dismiss all three issues.

[5]Appellants claim that an e-mail was sent to Judge Armstrong requesting that he rule on the writ of mandamus; however, no such e-mail is contained in the appellate record for our review.  Tex. R. App. P. 34.1, 34.5(a), (b); *see, e.g.*, *Maraio-Wilhoit v. Wilhoit*, No. 11-18-00312-CV, 2021 WL 389243, at *5 n.1 (Tex. App.—Eastland Feb. 4, 2021, no pet.) (mem. op.) ("[W]e note that '[t]he appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record.'  Tex. R. App. P. 34.1.  Therefore, because the attachments that Appellants submitted with their brief are not part of the appellate record, we cannot and do not consider them. *See, e.g.*, *Robb v. Horizon Communities. Improvement Ass'n*, 417 S.W.3d 585, 589 (Tex. App.—El Paso 2013, no pet.).").

the record does not show that the trial court ruled, or refused to rule, on these matters, Appellants failed to preserve them for our review. *See* TEX. R. APP. P. 33.1(a)(2). Accordingly, we overrule Appellants' sixth, seventh, and eighth issues.

*This Court's Ruling*

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS
JUSTICE

April 28, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.